**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-23158-BLOOM/Elfenbein**

JOHN TIMOTHY LEWIS,

      Plaintiff,

v.

KRISTI NOEM, in her official capacity
as Secretary of the United States Department
of Homeland Security,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Kristi Noem's ("Defendant") Motion to Dismiss, ECF No. [13] ("Motion"). Plaintiff John Timothy Lewis ("Plaintiff") filed a Response in Opposition, ECF No. [14], and Defendant filed a Reply, ECF No. [17]. The Court has reviewed the Motion, the supporting and opposing submissions, the record, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is granted.

### I.    BACKGROUND

Plaintiff, a "retired Air Force officer with extensive experience as a security subject matter expert for Department of Defense contractors," began working for the Transportation Security Administration ("TSA") on January 7, 2007. ECF No. [1] ¶ 11. At the time, he served as a Federal Security Director ("FSD") at Fort Lauderdale-Hollywood International Airport. *Id*. On July 14, 2013, Plaintiff was reassigned from FSD to Deputy Federal Security Director ("DFSD") at Miami International Airport. *Id*. He continues to serve in that position. *Id*.

On September 7, 2021, the TSA issued a vacancy announcement for FSD positions, listing 29 vacancies across locations including Miami International Airport. *Id.* ¶ 12. In January 2022, Plaintiff applied for the FSD position, listing Miami International Airport as his preferred location. *Id*.

In October 2021, before applying for the FSD position, Plaintiff submitted a request for a religious accommodation to the TSA's mandatory COVID-19 vaccination requirement. *Id.* ¶ 13. This request was based on his "Christian belief that the vaccine contained cells from aborted fetuses." *Id*. Plaintiff alleges that he "had previously engaged in protected EEO activity, including grievances and EEO complaints in 2015 and 2016," and a separate Equal Employment Opportunity Commission ("EEOC") appeal related to his religious accommodation request. *Id*.

On January 8, 2022, Plaintiff sent an email to Paul Leyh, Executive Director for Large Hubs, stating that he had "5 more good years in me and I had great ideas to continue to keep MIA improving and sustaining excellence." *Id.* ¶ 14, 16. In response, Leyh called Plaintiff a "dinosaur getting ready to retire." *Id.* ¶ 16.

On January 28, 2022, initial interviews were conducted for the FSD position. *Id.* ¶ 14. The interviewing panel consisted of Jesus Presas (Lead), Daniel Wyllie, and Jenel Chang. *Id*. Fourteen candidates were certified as eligible and six were interviewed. *Id*. Plaintiff was originally removed from the interview list but, following a special request by Paul Leyh, he was ultimately interviewed on February 18, 2022. *Id*. Following the interviews, the candidates received the following scores: Jeffries (15), Hawko (14), Plaintiff (11), Lowrey (9), Williams (9), and Byers (7). *Id.* ¶ 15. Notwithstanding his high score, Jeffries was not selected due to pending disciplinary action. *Id*.

On February 23, 2022, the TSA opened a resume call to expand the candidate pool. *Id.* ¶ 17. Four applicants sent in resumes: Jenel Chang (Chang"), David Cinalli, Girard Phelan, and

Louis Traverzo. *Id*. Chang had served as a panel member on the committee that interviewed Plaintiff and other candidates "for the same position she was now seeking." *Id*. Chang was over 40 years old, Christian, and had prior EEO activity. *Id.* ¶ 20.

Susan Tashiro, Assistant Administrator of Domestic Aviation Operations, was the official who made the recommendation for the selection. *Id.* ¶ 18. On March 16, 2022, Tashiro recommended Chang to the Executive Resources Counsil ("ERC"). *Id*. That same day, the ERC approved Chang for the Miami International Airport FSD position. *Id*. The official selection was made on March 31, 2022. *Id*. Jesus Presas, the "lead panel member who conducted the interviews," described Chang's selection as "very odd and quite unbelievable" because she had participated in the interview process for the same position. *Id.* ¶ 19.

The agency's stated reason for not selecting Plaintiff was that he "had experience working within [Miami International Airport], but he had challenges managing and leading a large workforce." *Id.* ¶ 21. Plaintiff alleges that he had "successfully served in leadership positions throughout his career and had demonstrated his ability to manage large, complex operations during his tenure at both" Fort Lauderdale-Hollywood International Airport and Miami International Airport. *Id*. Plaintiff alleges "significant damages including loss of career advancement opportunities, reduced earning potential, emotional distress, and damage to his professional reputation." *Id.* ¶ 22.

On July 15, 2025, Plaintiff filed his Complaint, asserting claims of (i) Age Discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") (Count I), (ii) Religious Discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII") (Count II), (iii) Retaliation in violation of Title VII (Count III), and (iv) Violation of the First Amendment to the United States Constitution, brought under

42 U.S.C. § 1983 (Count IV). *Id*. On December 19, 2025, Defendant filed the instant Motion, contending that each Count in the Complaint should be dismissed for failure to state a claim (Counts I through III) and for lack of subject matter jurisdiction (Count IV). ECF No. [13] at 2. Plaintiff responds that the Complaint "alleges sufficient facts to plausibly suggest age discrimination, religious discrimination, and unlawful retaliation." ECF No. [14] at 1.

## II.      LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550

U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

## III.  DISCUSSION

### A.  Count I: Age Discrimination

To establish a claim of age discrimination, a plaintiff must show that: (1) he was a member of a protected class (i.e., that he was forty years old, or older); (2) he was subjected to an adverse employment action; (3) he was treated less favorably than a younger, similarly situated employee; and (4) he was qualified to do the job. *East v. Clayton Cty.*, 436 F. App'x 904, 911 (11th Cir. 2011). Further, under the ADEA, the plaintiff must allege that age was the "but-for" cause of his termination. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) ("[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act.").

There is some degree of disagreement as to what "but-for" means in this context. Some courts interpret "but-for" to mean that age must be the sole cause of the adverse employment action. *See, e.g., Seiglie v. City of Doral*, No. 25-CV-20885-RAR, 2026 WL 375540, at *4 (S.D. Fla. Feb. 10, 2026) ("Plaintiff must allege that his age was the sole, but for cause of the adverse employment action he suffered." (citation omitted)); *Sclafani v. City of Margate*, No. 22-CV-61126-RS, 2023 WL 4363537, at *3 (S.D. Fla. July 6, 2023) ("An ADEA claim requires that the plaintiff prove that his age was the sole, or 'but for,' reason for the adverse employment action." (citation omitted)); *Garvey v. Sec'y, United States Dep't of Lab.*, No. 8:22-CV-2309-WFJ-AEP,

2023 WL 3057474, at *6 (M.D. Fla. Apr. 24, 2023) ("[A] plaintiff's age must be the sole cause of an adverse employment action for purposes of an ADEA disparate treatment claim." (citation omitted)).

Other courts adopt the approach that "but-for" causation merely requires that age be a necessary reason for the adverse employment action. *See, e.g., Cantrell v. Daca Specialty Servs.*, No. 4:18-CV-00271-HLM, 2019 WL 13083564, at *6 (N.D. Ga. Dec. 13, 2019) ("This does not mean, however, that age must have been the sole cause of the challenged decision."); *Bird v. Univ. of Fla. Board of Trustees et al.*, No. 1:18-CV-221-AW-GRJ, 2019 WL 13087801, at *3 (N.D. Fla. Aug. 23, 2019); *Collins v. Fulton Cnty. Sch. Dist.*, No. 1:12-CV-1299-ODE-JSA, 2012 WL 7802745, at *16 (N.D. Ga. Dec. 26, 2012), *report and recommendation adopted as modified*, No. 1:12-CV-1299-ODE-JSA, 2013 WL 12177006 (N.D. Ga. Feb. 27, 2013) ("Under the ADEA, a plaintiff must ultimately prove at trial that age was a 'determinative factor' in the employment decision, or, in other words, that the decision at issue would not have occurred absent the age discrimination." (citations omitted)); *Rembert v. Selma City Bd. of Educ.*, No. CV 14-00503-KD-B, 2015 WL 5679755, at *5 (S.D. Ala. Sept. 25, 2015) (finding no "heightened evidentiary requirement on ADEA plaintiffs to prove age was the 'sole' cause of the adverse employment action." (citations omitted)); *Pearson v. Lawrence Med. Ctr.*, No. 5:12-CV-1064-CLS, 2012 WL 5265774, at *4 (N.D. Ala. Oct. 24, 2012) (rejecting the "sole cause" approach).

Because the Eleventh Circuit has not resolved this question, in assessing which approach is correct, the Court turns to the Supreme Court's analysis in *Gross v. FBL Financial Services, Inc.* 557 U.S. 167 (2009). There, the Court found that the text of the ADEA does not authorize mixed-motive age discrimination claims. *Id.* at 175. The Court explained:

> [T]he ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided to

act. To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision.

*Id.* at 176–77.

The Court finds that the correct interpretation of "but-for" causation is that Plaintiff is required to show that age was a *necessary* factor in the adverse employment action, but Plaintiff need not show that age was the *sole* factor. This understanding is consistent with the majority of courts that have addressed the issue. *See Alsobrook v. Fannin Cty., Georgia*, No. 213CV00267RWSJCF, 2015 WL 13541132, at *8 (N.D. Ga. July 16, 2015) (collecting cases). It is also consistent with the manner in which the Eleventh Circuit has interpreted the closely related Americans with Disabilities Act ("ADA"). The Eleventh Circuit has explained that the statutory phrase "because of"—also used in the ADEA—does not mean "solely because of." *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1076 (11th Cir. 1996); *see also Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1334 (11th Cir. 1999) (finding that, under the ADA, "we simply require that a disability be shown to be a determinative, rather than the sole, decision-making factor.").

This interpretation also aligns with the Eleventh Circuit's approach to permitting affirmative pleading of alternative causes for adverse treatment. In *Savage v. Secure First Credit Union*, the district court dismissed a plaintiff's ADEA claim, Title VII retaliation claim, and ADA claim because the court understood the "but-for" causation requirement in each claim to mean that a party must plead that either age, retaliation, or disability was the sole cause of the employment action. 107 F. Supp. 3d 1212, 1215–18 (N.D. Ala. 2015), *rev'd and remanded* (May 25, 2016). The district court held that by affirmatively pleading alternative causes for the adverse treatment, the plaintiff failed to state a claim under the ADEA, Title VII, and the ADA. *Id.* at 1215–17. The

Eleventh Circuit reversed, highlighting that Federal Rule of Civil Procedure 8(d) explicitly allows "alternative and contradictory theories of liability." No. 15-12704, 2016 WL 2997171, at *1 (11th Cir. May 25, 2016). And  the holding supports the position that the Court should not preclude inconsistent pleadings based on a "sole cause" understanding of "but-for" causation.

In addition, this interpretation aligns with how "but-for" causation is thought of more broadly in the tort law context. That is,

> it is a long-recognized tenet of tort law that a plaintiff's injury can have multiple 'but-for' causes, each of which may be sufficient to support liability. Requiring proof that a prohibited consideration was the 'but for' cause of an adverse job action does not equate to a burden to show that such consideration was the 'sole' cause . . . . This remains so even after *Gross*.

*Bailey v. City of Huntsville, Ala.*, 2012 WL 2047672, *9 (N.D. Ala. 2012).

And finally, this interpretation is logical. As explained in *Freeman v. Koch Foods of Alabama*:

> A sole-causation standard (which requires a plaintiff to prove that the defendant's consideration of a protected category is the only cause of a challenged employment decision) is not the same as a but-for, or necessary, causation standard (which requires a plaintiff to prove that a challenged employment decision would not have occurred but for the defendant's consideration of a protected category). Even though a sole cause is also a necessary cause, a necessary cause need not be a sole cause. Rather, a particular result may have two or more necessary causes, and the majority opinion in *Gross* does not hold otherwise.

No. 2:09-CV-270-MEF, 2010 WL 9461668, at *2 (M.D. Ala. June 15, 2010) (internal citations omitted). Applying this framework to the instant ADEA claim, the Court turns to the parties' arguments.

Defendant argues that Plaintiff fails to state a claim for age discrimination under the ADEA. ECF No. [13] at 5. First, Defendant argues that Plaintiff fails to allege *direct* evidence of age discrimination. *Id*. The Complaint references age-based comments made by Paul Leyh but does not allege that Leyh had any role in deciding who was selected for the FSD position. *Id*.

Defendant points out that the Complaint "notes that Plaintiff got an interview at Leyh's request." *Id*. Indeed, the Complaint alleges who made the selection decisions, and it was Susan Tashiro and the Executive Resources Council, not Leyh. *Id*.

Second, Defendant contends that Plaintiff failed to plausibly state a claim for age discrimination based on *circumstantial* evidence. *Id*. at 6. Here, Plaintiff failed to plausibly suggest intentional discrimination, because his Complaint "expressly alleg[es] that he was *not* the highest ranked candidate who was interviewed for the job." *Id*. In doing so, Plaintiff "identifies a legitimate, non-discriminatory reason for [his] non-selection." *Id*.

Plaintiff's allegation that the consideration of further candidates after the first round of interviews was evidence of age discrimination also fails, Defendant argues, because it is unsupported by any facts in the record. *Id*. at 7. For one, the Complaint does not allege the ages of the two candidates who scored higher than him in the interview. *Id*. That is necessary to Plaintiff's claim, because the selection of Chang only appears discriminatory if the other two individuals who scored higher than Plaintiff were also older than Chang. *Id*. But given the absence of those allegations, there is no basis to infer discriminatory intent. *Id*.

Defendant points out that the Complaint alleges Chang is also over 40 years old, which undermines Plaintiff's claim of age discrimination because the interview process resulted in the selection of a person in the same protected age class as Plaintiff. *Id*.

Defendant asserts that irrespective of any "irregularity" in considering additional candidates, "the Complaint makes clear that Plaintiff was unlikely to be selected for the FSD position because he was the third-place candidate after the interview round." *Id*. Thus, there is no reason to think Plaintiff would have been recommended or hired even without consideration of additional candidates.

Plaintiff responds that he has met his pleading burden—he has shown plausibility to his claims. ECF No. [14] at 5. He contends that he has shown direct evidence in the statement made by Paul Leyh. *Id.* He argues the statement is highly probative because it represents "an explicit age-based statement made by a senior official with involvement in the selection process, directly connected to Plaintiff's candidacy for the position." *Id.* at 5–6.

Furthermore, Plaintiff argues that he has shown circumstantial evidence of discrimination, including, the "irregular process" by which Chang was permitted to interview candidates and then interview for the role herself. *Id.* at 6. Plaintiff also alleges that his Complaint showed a pattern of discrimination in the TSA against older males, which Leyh admitted had not changed. *Id.*[1] Plaintiff points to his allegations of "not easily equaled" qualifications, including his prior service as an FSD and nearly nine years as a DFSD and Fort Lauderdale-Hollywood International Airport. *Id.*[2] Finally, Plaintiff alleges that the TSA's stated reason for not hiring him—that he "had challenges managing and leading a large workforce"—was pretextual given his leadership experience at two airports. *Id.*

Defendant replies that, rather than expecting Plaintiff to respond to a legitimate, non-discriminatory reason for the employment action put forward by Defendant, Defendant was merely pointing out that "*Plaintiff himself* affirmatively pled facts sufficient to establish a legitimate, non-discriminatory reason for his non-selection: he was ranked in third place after interviews." ECF No. 17 at 2. "When the face of a complaint plainly identifies a legitimate, non-discriminatory

---

[1] Notwithstanding Plaintiff's assertion, this statement does not appear in the Complaint, nor does any reference to the so-called "2018 Report"l.

[2] Again, notwithstanding Plaintiff's assertion, the statement Plaintiff references does not appear anywhere in the Complaint. The Court therefore disregards this statement as well in its analysis.

reason for a personnel action, courts may consider that in evaluating whether a claim is plausible." *Id.* (citation omitted).

Defendant points out that, contrary to Plaintiff's assertion, the Complaint does not allege that Leyh had any decision-making role in the selection process or even control or influence over the process. *Id.* at 3. And animus by non-decisionmakers cannot support a claim for discrimination. *Id.* Moreover, Plaintiff fails to reconcile that, as alleged, Leyh allegedly made this age-based statement but also made a "special request" for Plaintiff to be interviewed. *Id.* (citation omitted).

Turning to circumstantial evidence, Defendant reiterates that the Complaint fails to state a claim. *Id.* at 4. Plaintiff's references to a 2018 Report and to Plaintiff's "not easily equaled" qualifications are absent from the Complaint. *Id*. And the Complaint fails to allege that Plaintiff had "superior" qualifications to Chang or any other candidate; it merely alleges that Plaintiff was "qualified" for the position, and Plaintiff's self-assessed superiority is belied by his third-place interview score. *Id*. at 5.

Defendant contends that any alleged irregularity in the selection process does not support a plausible claim of age discrimination. *Id*. At best, the Complaint supports the notion that the interview process was manipulated for a desired outcome, but it does not suggest that Plaintiff was not selected because of his age. *Id*. Defendant points to a "strikingly similar" case which Defendant claims shows that Plaintiff's Complaint is deficient. *Id.* at 6 (citing *Mitchell v. City of Miami Beach*, No. 21-22835-CIV, 2022 WL 1746919 (S.D. Fla. May 31, 2022), *aff'd*, No. 22-12139, 2024 WL 140065 (11th Cir. Jan. 12, 2024)). In that case, Mitchell, a sixty-five-year-old white male, applied for but was rejected from various openings within the Miami Beach police department, though he worked for the department as a police officer. *Mitchell*, 2022 WL 1746919 at * 1. During one interview, an interviewer asked made age-related comments about retirement. *Id*. Mitchell sued

the city for, *inter alia*, age discrimination in violation of the ADEA. *Id.* The district court, using the *McDonnell Douglas* framework as a guide, found that Mitchell failed to point to a similarly situated comparator outside of his protected class. *Id.* at *4–5. While he did give the ages of purported comparators, he merely described them as "less experienced," otherwise failing to allege "a single fact about any of their actual qualifications." *Id.* at 5. Similarly, the court held that he failed to present a convincing mosaic of circumstantial evidence, as his "solitary" allegation regarding the interviewer's comment—even combined with his listing of purported comparators' ages—was insufficient. *Id.* Here, Defendant points out that Plaintiff did not even point to a comment by an actual decision-maker, only pointing to a comment by Leyh. ECF No. [13] at 6. Moreover, Plaintiff, like Mitchell, failed to describe both the qualifications of Chang or the other candidates and how those qualifications compare to his own. And, Defendant points out, Plaintiff did not even allege the ages of his purported comparators, failing to even allege that Chang is younger than him. *Id.* Analogizing to the insufficiency of the complaint in *Mitchell*, Defendant argues the Complaint fails to state a proper claim. *Id.*

The Court finds that Plaintiff has failed to state a claim for age discrimination. As a general matter, "complaints alleging discrimination . . . must meet the 'plausibility standard' of *Twombly* and *Iqbal*." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. App'x 935, 937 (11th Cir. 2011). This means that they must offer "sufficient factual matter" to reasonably infer intentional discrimination. *Henderson*, 436 Fed. App'x at 937. A plaintiff may provide sufficient factual content using "either direct evidence or circumstantial evidence to show . . . discrimination." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022). Fundamentally, "[a]t the pleading stage, a plaintiff must plausibly allege that (1) his employer took an adverse employment action against her, and (2) his age 'was the 'but-for' cause of the employer's adverse action.' " *Dawson v. Wal-*

*Mart Stores E., LP*, 160 F. Supp. 3d 1303, 1306 (N.D. Ala. 2016) (emphasis removed) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015)).

Importantly, a plaintiff need not "establish a prima facie age-discrimination case in order to survive a Rule 12(b)(6) motion to dismiss." *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 642 (11th Cir. 2018) (*per curium*). *Ismael v. Roundtree* confirms as much, clarifying that the *McDonnell Douglas* framework does not displace the plaintiff's core burden, which is to plausibly allege that "the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination [or retaliation] by the decisionmaker." 161 F.4th 752, 764 (11th Cir. 2025). But, of course, the requisite causal connection between age and termination may be sufficiently pled by factual allegations indicating that the plaintiff was replaced by a substantially younger individual or that the plaintiff was treated differently than a similarly situated, substantially younger individual." *Muir v. Baptist Pulmonary Specialists, Inc.*, No. 3:21-CV-475-BJD-MCR, 2022 WL 22883187, at *6 (M.D. Fla. Feb. 15, 2022) (quotations omitted).

Plaintiff fails to satisfy this limited burden of alleging sufficient facts to "giv[e] rise to an inference of disparate treatment" or intentional discrimination. *Caraway v. Sec'y, U.S. Dep't of Transp.*, 550 F. App'x 704, 710 (11th Cir. 2013). Plaintiff fails to allege direct evidence of discriminatory animus. Plaintiff cites to a comment made by Paul Leyh, but the Complaint fails to allege that Leyh had any control or influence over the FSD selection process. Indeed, the Complaint alleges the contrary, stating that interviews were conducted by Jesus Presas (Lead), Daniel Wyllie, and Chang, ECF No. [1] ¶ 14, the ultimate recommendation was made by Susan Tashiro, *id.* ¶ 18, and the Executive Resources Council approved Chang's selection, *id*. Nothing in Plaintiff's allegations supports that Leyh had any decision-making authority, and the Eleventh

13

Circuit has made clear that "comments by non-decisionmakers do not raise an inference of discrimination . . . ." *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999) (citations omitted); *Standard v. A.B.E.L. Services*, *Inc.*, 161 F.3d 1318, 1329–30 (1998), *reh'g and reh'g en banc denied*, 172 F.3d 884 (11th Cir. 1999) (statement by non-decisionmaker that "older people have more go wrong" was not probative of discriminatory intent); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987) (statement by non-decisionmaker that "[t]he Hardy Corporation was going to weed out the old ones" did not raise a genuine issue of material fact regarding discriminatory intent). The Complaint is devoid of any allegations that *decision-makers* held discriminatory animus. As such, even construing all allegations in the light most favorable to Plaintiff, Plaintiff fails to set forth a plausible claim of age discrimination based on direct evidence.

As to circumstantial evidence, the Complaint similarly fails to raise a plausible inference of discrimination. As noted above, the Complaint fails to allege the 2018 Report or Plaintiff's "not easily equaled" qualifications, as argued in Plaintiff's Response. A plaintiff may not amend his complaint by raising new factual allegations in response to a motion to dismiss. *Burgess v. Religious Tech. Center, Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015). As such, the Court will not consider those allegations. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 (11th Cir. 2006) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss.").

That leaves the Court to consider as circumstantial evidence, the "irregular process" by which Chang was permitted to interview candidates and then interview for the role herself. ECF No. [14] at 6. It may well be, as Plaintiff alleges, that the selection process was "very odd and quite unbelievable." ECF No. [1] ¶ 19. And "the bending of established rules *may*, of course, be suggestive of discrimination." *Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270,

1279 (11th Cir. 2002) (emphasis added) (citing *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985)). But inexplicability or strangeness alone cannot support the finding of intentional discrimination. Indeed, the law is clear:

> [I]t is not objectively reasonable to presume that, simply because an employee has been subjected to seemingly inexplicable negative treatment, the true reason for the treatment must be unlawful discrimination. In other words, it is not objectively reasonable to infer . . . discrimination merely from the lack of a clear reason for an employer's mistreatment of its employee.

*Herron-Williams v. Alabama State Univ.*, 805 F. App'x 622, 632 (11th Cir. 2020). In other words, there must be some actual allegation from which it can be inferred that the mistreatment was "'because of' the plaintiff's age." *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010).

And here, no allegations exist in the Complaint to support the inference that age played a role. For one, there are no allegations regarding the relative qualifications of the candidates, including Chang. Indeed, the Court's only indication of relative qualifications is the allegation that Plaintiff ranked *third* after the first round of interviews. While the Complaint alleges that one higher-ranked candidate was ineligible, ECF No. [1] ¶ 15, it remains the case that the Complaint identifies a legitimate, non-discriminatory reason for Plaintiff's non-selection—he was not the highest-ranked candidate. That is, age could not have been the but-for cause of Plaintiff's non-selection if Plaintiff would not have been selected due to his lower ranking. *Drakeford v. Alabama Co-op. Extension Sys.*, 416 F. Supp. 2d 1286, 1304 (M.D. Ala.), *opinion adhered to on reconsideration*, 425 F. Supp. 2d 1274 (M.D. Ala. 2006) ("Plaintiff fails to grasp that for there to be an inference of discrimination he must show that the procedural irregularities had a negative impact on his application."). By alleging this ranking without additional allegations to indicate age played a role in the decision-making process, Plaintiff appears to have "'[pled] himself out of

court' through the factual allegations in the complaint." *My24HourNews.com, Inc. v. AT&T Corp.*, 791 F. App'x 788, 802 (11th Cir. 2019) (quoting *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016)); *see also Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *on reh'g*, 764 F.2d 1400 (11th Cir. 1985) ("[A] complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." (citations omitted)).

Similarly, the Complaint fails to allege the ages of the other candidates, including Chang and the higher-ranked candidates.[3] The Complaint merely alleges that Chang was also "over 40 years old." ECF No. [1] ¶ 20. It does not allege that Chang was younger than Plaintiff. While the Court can and must draw factual inferences in Plaintiff's favor, it "cannot assume facts which have not been alleged*." Ochwangi v. Direct Gen. Ins. Co.*, No. 1:08-CV-0004-WSD-AJB, 2008 WL 11470712, at *4 (N.D. Ga. Apr. 23, 2008); *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993) ("[A] court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [him].").

Plaintiff also points to the TSA's stated reason for not hiring him—that he "had experience working within MIA, but he had challenges managing and leading a large workforce"—and describes it as pretextual given his leadership experience at two airports. ECF No. [14] at 6. To survive a motion to dismiss by showing pretext, a plaintiff "must show that the employer's reason

---

[3] Plaintiff alleges that he "lacks access to such information pre-discovery." ECF No. [14] at 9. He argues that he does not need this information, because (i) Leyh's age-based comment, (ii) the fact that his accommodation request was in his file, and (iii) the fact that the TSA tracked EEO activity are sufficient. *Id*. On the facts alleged, Plaintiff is incorrect. As discussed, Leyh's comment appears entirely separate from the interviewing and selection process—that is, the adverse employment action—rendering it irrelevant. And the Complaint does not mention the accommodation request being in his file or the TSA tracking EEO activity. Nor would it make a difference if the Complaint did mention either of these allegations, as neither is relevant if Plaintiff cannot also allege that the decision-makers themselves knew of his EEO activity. So, here—where other allegations are lacking—some approximation of the ages of Chang or the other candidates is necessary to raise an inference of an impermissible motive.

is both false 'and that discrimination was the real reason' for the decision." *Bennett v. Chatham Cty. Sheriff Dep't*, 315 F. App'x 152, 159 (11th Cir. 2008) (quoting *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006)). Even taking as true that Plaintiff had ultimately "successfully served in leadership positions throughout his career and had demonstrated his ability to manage large, complex operations," ECF No. [1] ¶ 21, it does not follow that his age played a role in the decision-making process without supporting allegations. There is nothing in Plaintiff's Complaint to suggest it was his *age* that motivated the decision. Specifically, without allegations regarding the ages or qualifications of the other candidates, including Chang, to indicate an age-related motivation in the decision, there is no basis to infer that age played a role in the non-selection. *Nix v. WLCY Radio/Rahall Commcins*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated by Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." (citations omitted)).

The Court grants the Motion and dismisses Plaintiff's ADEA claim.

### B. Count II: Religious Discrimination

Plaintiff alleges religious discrimination in violation of Title VII, specifically contending that Defendant failed to select him as FSD because of his Christian faith and request for accommodation. ECF No. [1] ¶¶ 29–33. Defendant argues that Plaintiff fails to state a claim for religious discrimination and  Plaintiff provides no direct evidence of religious discrimination, so he must proceed via circumstantial evidence. ECF No. [13] at 9. Defendant contends that, under the *McDonnell Douglas* burden-shifting framework or the "convincing mosaic" framework, Plaintiff fails to state a claim. *Id*. As to the *McDonnell Douglas* framework, Defendant argues that Plaintiff fails to show that someone outside his protected class was treated differently, as his

Complaint "expressly alleges that the person selected for the FSD position, Chang, shared the *same* religion as Plaintiff." *Id.* at 10 (emphasis in original). Turning to the convincing mosaic framework, Defendant argues that Plaintiff's Complaint lacks any indication of "intent to present a convincing mosaic theory." *Id.* at 9 n. 2. But even under this theory, Plaintiff has alleged no factual content suggesting religious discrimination. *Id.*

Plaintiff responds that his Complaint alleges that his accommodation request—which took place three months before his application, four months before his interview, and five months before his non-selection—was "accessible to decisionmakers." ECF No. [14] at 7. When combined with "the irregular selection process and suspicious timing," he contends his allegations permit a reasonable inference of discrimination. *Id.* Moreover, Plaintiff clarifies that he does not allege discrimination based on his religious identity *per se,* but on his "exercise of religious conscience by requesting accommodation." *Id.*

Defendant replies that any attempt to define a protected class based on "specific religious belief," rather than a "particular faith or subgroup," is suspect. ECF No. [17] at 7 (citation omitted). Moreover, the Complaint does not allege whether Chang or any other applicant similarly requested a religious accommodation. *Id.* Further, the Complaint does not allege that any decision-maker involved in the selection process was aware of the accommodation request, and Plaintiff cannot amend his Complaint by alleging in his Response that the request was accessible to decision-makers. *Id.* at 7, 8 n.4. Finally, Plaintiff's assertions of "suspicious timing" fall flat when his accommodation request was five months before his non-selection, well beyond the three-month threshold held by the Eleventh Circuit to undermine temporal proximity-based claims. *Id.* at 8 (citation omitted).

In assessing a religious discrimination claim based on circumstantial evidence, plaintiffs may proceed under the *McDonnell Douglas* burden-shifting framework or the convincing mosaic framework. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). However, the *McDonnell Douglas* framework is an evidentiary standard that sets the burden of proof for *summary judgment*, not the motion to dismiss stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Indeed, the Supreme Court has been clear: "This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511. Instead, the fundamental burden on the plaintiff at the motion to dismiss stage is to "provide enough factual matter (taken as true) to suggest intentional . . . discrimination." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008). The emphasis is on whether the complaint "plausibly suggest[s]" intentional discrimination. *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015).

Still, the *McDonnell Douglas* framework remains a "helpful guide to the determination of the issue." *Powell v. Harsco Metal*, No. 2:12-cv-4080, 2013 WL 3242759, at *5 (N.D. Ala. June 20, 2013) (relying on the *McDonnell Douglas* framework to assess motion to dismiss Title VII claim). Under this framework, the question is whether the plaintiff alleges (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) either replacement by or less favorable treatment than a similarly situated individual outside the plaintiff's protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Alternatively, plaintiffs may establish a "convincing mosaic" with "evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2)

19

systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (citations omitted). Again, while the core question is whether the plaintiff's allegations "plausibly suggest . . . intentional discrimination," *Surtain*, 789 F.3d at 1246, the convincing mosaic framework remains a helpful heuristic for assessing whether a plaintiff has stated a claim.

Here, using either framework as a guide, Plaintiff has failed to set forth allegations that support a plausible inference of religious discrimination. As to the fourth element of the *McDonnell Douglas* framework, Plaintiff cannot point to a non-Christian comparator who received more favorable treatment. Indeed, the only comparator is Chang, whom Plaintiff alleges is also Christian. Plaintiff's attempt to focus on his specific accommodation rather than his religious affiliation more broadly is unavailing. By Plaintiff's logic, his "protected group appears not to be based on a particular faith or subgroup, but rather a specific religious belief—namely, opposition to the COVID-19 vaccine." *Schmidt v. Disney Parks, Experiences & Prods., Inc.*, 721 F. Supp. 3d 1314, 1325 (M.D. Fla. 2024). This narrow class definition—"based on [a] particular religious belief, rather than the broader religious faith or group to which [the class] belongs"—is impermissible. *Id.* at 1326 (quoting *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1305 n.36 (M.D. Ala. 2019), *aff'd*, 6 F.4th 1247 (11th Cir. 2021).

Similarly, using the convincing mosaic framework as a guide, Plaintiff fails to state a claim for religious discrimination. First, Plaintiff has not alleged any facts supporting that the relevant decision-makers regarding FSD selection were aware of his accommodation. His Complaint states that his religious accommodation "was known to Defendant and factored into the decision not to select him for the FSD position." ECF No. [1] ¶ 31. But this conclusory statement does not allege how Defendants knew about his accommodation. Plaintiff attends to rectify this by alleging in his

20

Response that his "accommodation request was filed pursuant to agency policy and would be in his personnel file, accessible to decisionmakers." ECF No. [14] at 7. But that allegation does not appear in his Complaint, and as such, the Court cannot consider it. Moreover, a record being in a general agency file is not tantamount to an allegation that the relevant decision-makers knew about the record.

Plaintiff's appeal to "suspicious timing" also fails as a matter of law. The Eleventh Circuit has been clear that a three-month lapse between a particular act by an employee and an adverse employment action is too attenuated to constitute very close temporal proximity so as to establish causation. *See Gilliam v. U.S. Dep't of Veterans Affs.*, 822 F. App'x 985, 990 (11th Cir. 2020) ("[T]he lapse of three . . . is too long to permit an inference of causation based on temporal proximity alone."); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough." (citations omitted)); *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010) ("Even a three-month interval between the protected expression and the employment action—the briefest interval we face here—is too long."). Here, Plaintiff alleges *five months* between his request for a religious accommodation and his non-selection.

In short, there are insufficient allegations  to establish a plausible claim of religious discrimination, and the religious discrimination claim is dismissed.

## C. Count III: Retaliation

Plaintiff alleges retaliation in violation of Title VII, claiming that his non-selection "was motivated by a retaliatory animus against him for his prior protected EEO activity and his continued advocacy for his rights under federal employment discrimination laws." ECF No. [1] ¶ 36. Defendant argues that Plaintiff fails to state a claim, because—under the *McDonnell Douglas*

framework—he fails to plausibly plead a causal link between his alleged protected activity and his non-selection. ECF No. [13] at 11. The only facts available, Defendant says, are his 2015 and 2016 EEO complaints, his 2021 religious accommodation request and associated appeal, and his non-selection. *Id.* at 12. But the years-long lapse between his EEO complaints and his non-selection and the five-month lapse between his accommodation request and his non-selection are too distant as a matter of law to establish causation. *Id.* (citations omitted).

In the absence of meaningful temporal proximity, Defendant contends that Plaintiff must plead other facts that would support an inference of retaliation. *Id.* at 13. But Plaintiff has not done so; indeed, the Complaint does not even allege that the decision-makers knew of his protected activity at the time of his non-selection. *Id.*

Plaintiff responds that he has shown "[f]ive month temporal proximity, combined with the irregular selection process, documented agency pattern of retaliation, and agency tracking of EEO activity." ECF No. [14] at 8. Specifically, Plaintiff alleges that his temporal connection is supplemented by allegations regarding "the unprecedented selection process, pattern evidence of agency retaliation, and the fact that Chang was selected despite also having prior EEO activity, demonstrating the Agency tracked such information." *Id.* That is enough to raise his retaliation claim above the speculative level. *Id.*

Defendant replies and points out that the Complaint does not contain any allegations regarding "pattern evidence." ECF No. [17] at 9. In addition, the fact that a selection process was "unprecedented" does not indicate an unlawful motivation; the Complaint merely speculates that there was an unlawful motive. *Id.* Third, Defendant contends that Plaintiff's assertion that Chang also had EEO activity supports Defendant's position that there was no retaliation. *Id.* Finally, Plaintiff's assertion that the agency "tracked" EEO activity is "irrelevant and not actually alleged

in the Complaint." *Id*. It is irrelevant because it does not matter whether the *agency* knew of his prior EEO activity; Plaintiff must allege that the decision-makers knew of his protected activity, which he does not do. *Id*.

As a general matter, to state a retaliation claim under Title VII, a plaintiff must plausibly allege that (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse employment action; and (3) his employer's retaliatory motive was the "but for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

Based on these elements, the Court agrees with Defendant that Plaintiff has not carried his burden of stating a plausible claim of retaliation. First, Plaintiff has not alleged temporal proximity. Five months elapsed between Plaintiff's religious accommodation request and his non-selection. This is—as a matter of law—too attenuated to support a finding of causation *based on temporal proximity alone. See Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011) ("If there is a delay of more than three months between the two events, then the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show causation."). And where temporal proximity is not enough, Plaintiff needs to allege other facts to establish a causal connection.[4]

Plaintiff's references to "the irregular selection process, documented agency pattern of retaliation, and agency tracking of EEO activity," ECF No. [14] at 8, do not change the Court's analysis. For one, it is unclear what Plaintiff means by "documented agency pattern of retaliation,"

---

[4] To the extent Plaintiff refers to his *appeal* to support his religious accommodation request, Plaintiff fails to allege when that appeal was filed or any other information about it. This leaves the Court unable to determine temporal proximity, and this is not the sort of factual inference that the Court can resolve in favor of Plaintiff. It is, instead, a fact he was required to allege if he sought to establish retaliation based on temporal proximity.

as the Complaint is devoid of allegations in support the alleged pattern. To the extent Plaintiff is referring to the 2018 Report, the Court has already pointed out that this Report is not alleged in the Complaint. Similarly, the Complaint does not allege that the TSA tracks EEO activity. Nor would it be material as Plaintiff would need to allege that the *decision-makers* knew about his EEO activity. *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020) (holding that an employee must show that "the decisionmaker actually knew about the employee's protected expression."). That the TSA in general tracked EEO activity would not be a sufficient allegation. And in the absence of an allegation that the decision-makers knew about Plaintiff's protected activity—as opposed to the "unsupported inference" that Plaintiff offers, there cannot be a reasonable inference of retaliation.

That leaves the "irregularity" of the selection process as Plaintiff's only supporting factual allegation. As above, the irregularity of the process—without *something* to connect the decision to Plaintiff's protected activity—is not enough to support a plausible inference of retaliation. Because Plaintiff admits that he was not the top-ranked candidate, Plaintiff has not shown that any irregularity had any impact on his application. *Drakeford*, 416 F. Supp. 2d at 1304 ("Plaintiff fails to grasp that for there to be an inference of discrimination he must show that the procedural irregularities had a negative impact on his application."). The Court must draw reasonable inferences in Plaintiff's favor, but it may not ignore "obvious alternative explanations" on the face of the Complaint—such as the fact that Plaintiff was not the top-ranked candidate. *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567). More significantly, it is insufficient to rely on procedural irregularities without other allegations indicating that the alleged deviations were motivated by retaliation. *Labady v. Gemini Air Cargo, Inc.*, 350 F. Supp. 2d 1002, 1014 (S.D. Fla. 2004) (quoting *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000)). Indeed, the only

allegation regarding the selection agency's handling of protected EEO activity is the allegation that Chang—who was ultimately selected—has also engaged in prior EEO activity. ECF No. [1] ¶ 20.

Thus, even taking all of the facts as truer, the Complaint fails to plausibly allege facts supporting a claim of retaliation and must be dismissed.

### D.   Count IV: First Amendment

Finally, Plaintiff alleges a violation of his First Amendment rights in the form of discrimination "based on his religious beliefs and his exercise of free speech in requesting religious accommodation." ECF No. [1] ¶ 41. He specifically alleges that his cause of action arises under 42 U.S.C. § 1983. *Id.* ¶ 42.

Defendant argues the Court lacks subject matter jurisdiction over Plaintiff's claim. ECF No. [13] at 14. Specifically, Defendant contends that "§ 1983 does not afford a cause of action against federal officials like Defendant, and First Amendment religious discrimination claims in the federal employment context are preempted by Title VII, which provides federal employees with the exclusive avenue for pursuing such claims." *Id*. Defendant argues  that the federal Government has not waived its sovereign immunity to suit under § 1983, so his suit against a federal Government official in her official capacity cannot stand. *Id*. Moreover, the Court lacks subject matter jurisdiction because Title VII "provides the exclusive remedy for federal employees claiming religious discrimination in the context of their employment, thereby preempting First Amendment religious discrimination claims asserted by a federal employee against his employer." *Id.* at 14–15.

Plaintiff concedes that "§ 1983 does not apply to federal officials" but describes that as "merely a pleading error easily corrected." ECF No. [14] at 10. Plaintiff's Complaint, he contends,

25

should be construed as asserting its claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Moreover, Plaintiff argues that the Court should not engage in "mechanical application of preclusion doctrines" to construe Plaintiff's First Amendment claim as preempted by Title VII. *Id.* at 10–11. This is especially so since Plaintiff's accommodation request "implicates both Free Exercise and Free Speech principles," which raise concerns beyond Title VII's framework. *Id.* at 11.

Defendant replies that the Court should not allow Plaintiff to refashion his claim as a *Bivens* claim because "both Supreme Court and Eleventh Circuit decisions squarely foreclose a *Bivens* remedy for an alleged violation of the First Amendment in the context of a federal employment action such as non-selection for promotion." ECF No. [17] at 10. Moreover, the Court should not permit a claim operating "directly under the First Amendment" because Plaintiff's claim "arose from and occurred entirely within the context of his employment." *Id*. Plaintiff has therefore failed to show a religious discrimination claim that falls outside Title VII. *Id*.

The Court agrees with Defendant. As an initial matter, the claim is due to be dismissed as it purports to operate under § 1983, which applies only to state officials and not to federal officials. *Foster v. Guillou*, No. 22-13116, 2023 WL 7126425, at *2 (11th Cir. Oct. 30, 2023) ("§ 1983 applies only to state officials . . ."). The Court cannot re-write Plaintiff's Complaint to operate under *Bivens*. *Burgess v. Religious Tech. Center, Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015). Nor would the Court do so, because *Bivens* claims may not be asserted against *official capacity* defendants, regardless of the factual basis for the claim. *See FDIC v. Meyer*, 510 U.S. 471, 485 (1994); *Boda v. United States*, 698 F.2d 1174 (11th Cir. 1983).

Even if the Court were to interpret the claim as permissibly operating under *Bivens*, the Court would still find the claim subject to dismissal. Plaintiff's claims are fundamentally

26

employment discrimination claims. Such claims are governed by Title VII, and Title VII provides the exclusive remedy for violations of rights that occur in the employment context. *Byrd v. Postmaster Gen.*, 582 F. App'x 787, 789 (11th Cir. 2014) ("Title VII provides the exclusive remedy for [] discrimination claims arising out of federal employment." (citing *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 45 n. 2 (11th Cir. 1997))); *Osahar v. Postmaster Gen. of U.S. Postal Serv.*, 263 F. App'x 753, 764 (11th Cir. 2008) (dismissing a *Bivens* action "because Title VII provides the exclusive remedy for employment discrimination actions brought by federal employees"). The Eleventh Circuit has held that a *Bivens*-type remedy is only appropriate "where (1) the petitioner has no alternative means of obtaining redress, and (2) there are no special factors counseling hesitation." *Lee v. Hughes*, 145 F.3d 1272, 1275 (11th Cir.1998) (quotation and citation omitted). The Supreme Court has indicated similarly:

> Our cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure. If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action.

*Egbert v. Boule*, 596 U.S. 482, 493 (2022) (cleaned up and internal citations omitted). Title VII represents such an alternative means of obtaining redress, rendering any *Bivens* claim based on a violation of Plaintiff's First Amendment rights untenable.

Similarly, Plaintiff is unable to bring his claim "directly under the First Amendment." ECF No. [14] at 12. As the Supreme Court has unequivocally stated, Congress intended for Title VII to serve as the exclusive and preemptive remedy for claims regarding federal employment discrimination. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 828–29 (1976) ("[C]ongressional intent in 1972 was to [create] an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination . . . . Congress intended [Title VII] to be exclusive

27

and pre-emptive."). Indeed, in *Bush v. Lucas*, the Supreme Court expressly held that a federal employee could not maintain a cause of action against his supervisor for violation of his First Amendment rights. 462 U.S. 367, 381 (1983). The Court declined to permit a constitutional claim in cases in which the plaintiff's claim for relief arises out of an employment relationship governed by procedural and substantive administrative provisions that establish an effective remedy for constitutional violations by the Government. *Id.* at 389–90. Here, Plaintiff's First Amendment claim would be "based on the same alleged conduct as her employment discrimination and retaliation claims." *Gooden v. Internal Revenue Serv.*, 679 F. App'x 958, 969 (11th Cir. 2017). As such, "they are preempted by Title VII." *Id.* ("Title VII is the exclusive remedy for redressing federal employment discrimination. (citing *Brown*, 425 U.S. at 821)).[5]

Thus, Plaintiff's First Amendment claim is dismissed.

### E. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a complaint should be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "[a] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is

---

[5] Plaintiff's appeal to *Kennedy v. Bremerton School District* is unavailing. 597 U.S. 507 (2022). Plaintiff fails to explain how *Kennedy*—a case involving a school district in which the plaintiff was determined to be engaging in private, First Amendment-protected activity—is sufficiently analogous. Moreover, several cases that expressly considered the relationship between Title VII and First Amendment claims in the federal employment discrimination context have found that Title VII preempts constitutional claims based on the same facts. *See, e.g., Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) ("Title VII preempts any constitutional cause of action that a court might find under the First or Fifth Amendments for discrimination in federal employment."); *Malekpour v. Chao*, 682 F. App'x 471, 475 (7th Cir. 2017) ("[F]or federal employees claiming discrimination on the basis of religion and national origin (as well as reprisal for complaining about discrimination), Title VII is the exclusive judicial remedy." (collecting cases)).

represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).[6]

Here, Plaintiff did not file a motion to amend his Complaint.[7] Plaintiff's request to amend contained in his Response is immaterial. The Eleventh Circuit has held that a request for leave to amend found in a response in opposition to a motion to dismiss is not properly before the court and "possesse[s] no legal effect." *See Newton v. Duke Energy Fla.*, LLC, 895 F.3d 1270, 1277 (11th Cir. 2018). The court is "free to dismiss [plaintiff's] complaint with prejudice" on that basis alone without determining whether further amendment is futile, unless dismissal is based on shotgun pleading grounds. *See Pop v. LuliFama.com, LLC*, 145 F.4th 1284, 1297–98 (11th Cir. 2025). Here, Plaintiff has not requested leave to amend, and dismissal is not on shotgun pleading grounds. Thus, the Court declines to *sua sponte* grant leave, and the Complaint is dismissed with prejudice.

Moreover, even if the Court were to consider futility, the Court would nonetheless find that amendment would be futile. The Complaint simply lacks factual allegations sufficient to establish a basis for relief. *See Pop v. LuliFama.com, LLC*, 145 F.4th 1284, 1297-98 (11th Cir. 2025) (concluding there was no error in denying plaintiff leave to amend an insufficiently pled complaint under Fed. R. Civ. P. 9(b), stating that "[i]n short, it is not that we 'do not know whether' [plaintiff] has stated a claim; rather, we know that he has not."); *Ounjian v Globoforce, Inc.*, 89 F.4th 852, 862 (11th Cir. 2023) ("A district court may dismiss a complaint with prejudice where the plaintiff fails to request leave to amend, or where the complaint could not be more carefully drafted to state

---

[6] An exception exists when a complaint is dismissed on shotgun pleading grounds. "When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must *sua ponte* give [the litigant] one chance to replead before dismissing [the litigant's] case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro Inc., v. Shabents*, 878 F.3d 1291, 1296 (11th Cir. 2018).

[7] The deadline to file a motion to amend pleadings was March 30, 2026. See ECF No. [21].

a valid claim."). With respect to Count I, Plaintiff pleads that he was not the highest ranked applicant, and there are insufficient allegations to support that his age was the but-for cause of his non-selection. With respect to Count II, Plaintiff has failed to allege that the relevant decision-makers knew of his religious accommodation, nor would it matter, as Plaintiff alleges the position was given to someone in the same protected class. With respect to Count III, Plaintiff has failed to allege that the relevant decision-makers knew of his religious accommodation; that the TSA broadly tracked EEOC activity is insufficient. And with respect to Count IV, the Court plainly lacks subject matter jurisdiction, and any amendment would be futile. Thus, dismissal will operate with prejudice.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.  Defendant's Motion to Dismiss, **ECF No. [13]**, is **GRANTED**.

2.  Plaintiff's Complaint, ECF No. [1], is **DISMISSED WITH PREJUDICE**.

3.  The Clerk is instructed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 16, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record